# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| VALLEY FOOD SERVICES, LLC, | ) | Case No. 06-50038 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| MAUREEN SCULLY, Chapter 7 Trustee for the Valley Food Services, LLC Bankruptcy Estate, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 07-4046 |
| | ) | |
| STATE OF ARKANSAS DEPARTMENT OF FINANCE & ADMINISTRATION, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the Trustee's motion for summary judgment on her complaint to avoid and to recover two allegedly preferential transfers ("Transfers") that the Debtor made to the Defendant within ninety days before the Debtor filed its bankruptcy petition. One of the Transfers was a $35,000 payment for overdue compensating use taxes, and the second was a $243,328 payment for overdue soft drink taxes. At this juncture, only two general issues remain in dispute: (1) whether the funds transferred to the Defendant were subject to a constructive trust in favor of the Defendant and therefore were not avoidable transfers of the Debtor's property under 11 U.S.C. § 547(b), and (2) whether the Transfers are excepted from avoidance under § 547(c)(1) and (2). The Defendant has conceded that the Trustee has satisfied all of the other elements necessary for the avoidance and recovery of the Transfers under § 547(b) and § 550.

For the reasons stated below, the Court finds that the uncontroverted facts establish as a matter of law that § 547(c)(1) and (2) are inapplicable to either of the Transfers and that the $243,328 transfer is avoidable as a preferential transfer under § 547(b). Thus, the Trustee is entitled to summary judgment with respect to this Transfer. There is, however, a material issue of fact precluding summary judgment as to whether the $35,000 payment to the Defendant was a transfer

of the Debtor's property or was property subject to a constructive trust in favor of the Defendant. Accordingly, the Trustee's request for summary judgment on that issue will be denied.

## STANDARD OF REVIEW

Summary judgment is appropriate when the matters presented to the Court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[1] The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact.[2] Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion.[3] In ruling on a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."[4]

## BACKGROUND

Prior to its bankruptcy filing on February 14, 2006, the Debtor operated a distribution and trucking company supplying various products, including soft drink syrups, to fast-food restaurants in Missouri and surrounding states. The Debtor operated in Arkansas under the authority of a "Compensating Use Tax Permit" issued by the Defendant, the State of Arkansas Department of Finance and Administration.

Arkansas law required the Debtor to pay certain taxes to Arkansas for the goods it sold in the state. The two taxes pertinent here are: (1) a "Soft Drink Tax" levied under Ark. Code Ann. § 26-57-904 on distributors of soft drink syrups or bottled drinks based on the volume of goods sold, and (2) a "Compensating Use Tax" levied under Ark. Code Ann. § 26-53-101, *et seq.,* on users of

---

[1] Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

[2] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 161, 90 S. Ct. 1598, 1611, 26 L.Ed.2d 142 (1970).

[3] *Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (a party opposing a summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts").

[4] *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

2

personal property purchased from vendors. Although the Compensating Use Tax is levied on purchasers, § 26-53-101 authorizes the vendor of the goods to collect and remit the Compensating Use Tax. Both taxes were payable on a monthly basis. As the charts below indicate, the Debtor was substantially current on its Soft Drink and Compensating Use Tax payments from March to August 2005.

**Soft Drink Taxes**

| Tax Period | Date Paid | Amount |
|---|---|---|
| 2/05 | 3/8/05 | $38,928 |
| 3/05 | 4/09/05 | $45,025 |
| 4/05 | 5/10/05 | $46,306 |
| 5/05 | 6/20/05 | $48,304 |
| 6/05 | 8/3/05 | $46,472 |

**Compensating Use Taxes**

| Tax Period | Date Paid | Amount |
|---|---|---|
| 1/05 | 2/11/05 | $3,006 |
| 2/05 | 3/8/05 | $3,484 |
| 3/05 | 4/09/05 | $2,605 |
| 4/05 | 5/10/05 | $3,539 |
| 5/05 | 6/20/05 | $4,345 |
| 6/05 | 8/3/05 | $7,843 |

However, the Debtor did not make any Soft Drink or Compensating Use Tax payments in September, October, or November. And on December 21, 2005, the Defendant issued a "Business Closure Order" notifying the Debtor that the Defendant would close and seal the Debtor's business if the Debtor did not make full payment of all amounts due for sales and use taxes within five days

of the Business Closure Order. The Debtor promptly complied with the Defendant's demand. On December 23, 2005, the Debtor made a $243,328 payment toward its July, August, September, and October 2005 Soft Drink Tax obligations, and on January 3, 2006, the Debtor made a $35,000 payment toward its July, August, September and October 2005 Compensating Use Tax obligations.[5]

On February 14, 2006, the Debtor filed for protection under Chapter 11 of the Bankruptcy Code. The case was converted to a Chapter 7 case on June 28, 2006, and Maureen Scully, was appointed as the trustee for the Debtor's bankruptcy estate. On March 7, 2007, the Trustee timely filed this adversary proceeding seeking to avoid as preferential transfers and to recover the $243,328 Soft Drink Tax payment made on December 23, 2005 and the $35,000 Compensating Use Tax payment made on January 3, 2006..

## DISCUSSION

**A.     Sections § 547(c)(1) and (2) do not shield the Transfers from avoidance.**

Although the § 547(c) preference defenses are usually dealt with after a court has determined that a transfer is preferential, the Court will address them first in this case because the undisputed facts readily establish that neither transfer can be shielded from avoidance under the defenses alleged.

   1.   **The Transfers were not made or intended to be contemporaneous exchanges for new value.**

Section 547(c)(1) shields from avoidance a transfer that was intended by the debtor and the creditor to be a contemporaneous exchange for new value and, in fact, was a substantially contemporaneous exchange.[6] The Defendant contends that the Debtor made the Transfers in exchange for "new credit terms," but it doesn't actually describe what these new credit terms were. The Defendant's other statements suggest that the Defendant believes its agreement to refrain from taking legal actions authorized by Arkansas law, *i.e.*, closing down the Debtor's business and

---

[5] It is unclear from the uncontroverted facts whether these payments satisfied in full the Debtor's overdue tax obligations.

[6] 11 U.S.C. § 547(c)(1).

imposing a lien on the goods sold to the Debtor's customers, constituted new credit terms, or, in the terms of the statute, "new value."

Section 547(a)(2) defines new value, nonexclusively, as money's worth in goods, services or new credit.[7] Here, the Defendant says that it provided "new credit" to the Debtor, but all it really did was to permit the Debtor to continue operating. There has been no suggestion or proof that the Defendant actually extended credit to the Debtor, by deferring monthly tax payments or otherwise. Courts have consistently held that refraining from exercising a preexisting right is not new value for purposes of § 547(c)(1), even if forbearance of that right enables the debtor to continue operating.[8] Therefore, the Court finds that § 547(c)(1) does not shield the Transfers from avoidance.

### 2. The Transfers were not made in the ordinary course of business.

Under § 547(c)(2), a trustee cannot avoid a preferential transfer to the extent the transfer was for a debt incurred by the debtor in the ordinary course of the debtor's business and made in the ordinary course of the debtor's business or made according to ordinary business terms.[9] In this case, the Transfers may have been in payment of a debt incurred by the Debtor in the ordinary course of its business, but they certainly were not made in the ordinary course of the Debtor's business or according to ordinary business terms.

"Ordinary course of business" is not defined in the Bankruptcy Code, nor is there a "precise legal test which can be applied to determine whether a preferential payment was made in the ordinary course of business; rather, the court must engage in a 'peculiarly factual' analysis."[10] The cornerstone of this analysis is to determine whether there is "some consistency with other business

---

[7] 11 U.S.C. § 547(a)(2).

[8] *See In re Air Conditioning, Inc., of Stuart*, 845 F.2d 293, 298 (11th Cir. 1988) ("Forbearance from exercising a preexisting right does not constitute new value under 11 U.S.C. § 547(a)(2)"). *See also*, *In re Valley Steel Products Co., Inc*. 214 B.R. 202, 207-08 (E.D. Mo. 1997) (holding that the I.R.S.'s forbearance from perfecting liens for past-due taxes was not new value); *In re Amarillo Mesquite Grill, Inc.*, 355 B.R. 826, 836 (Bankr. D. Kan. 2006) (holding that creditor's agreement to not cease providing necessary insurance in exchange for payment of outstanding balances was not new value).

[9] 11 U.S.C. §547(c)(2).

[10] *Lovett v. St. Johnsbury Trucking,* 931 F.2d 494, 497 (8th Cir. 1991) (quotations and citations omitted).

transactions between the debtor and the creditor."[11]  The fact that a payment resulted from pressure or any unusual activity by the creditor, while not dispositive, weighs heavily in favor of a finding that the payment was not made in the ordinary course of business.

The Transfers here are textbook examples of transfers made <u>outside</u> the ordinary course of business.  First, the Transfers were not in the ordinary course of business because they were made only after the Defendant threatened to close the Debtor's business if the Debtor didn't satisfy its tax obligations.[12]  And the Defendant's suggestion that the act of sending a Business Closure Order was not coercive because the Debtor voluntarily complied with the order is, frankly, ludicrous.

Second, there was absolutely no consistency between the Transfers and prior payments.  The amounts were vastly different – the $243,328 Soft Drink Tax payment was almost five times as much as any of the five prior monthly payments, and the $35,000 Compensating Use Tax payment was between seven and thirteen times greater than the six prior monthly payments.  And the timing of the Transfers differed significantly from prior payments.  The five payments on each of the taxes prior to the Transfers were made within a month (or so) of the relevant tax period, but the Transfers, which paid four months' worth of tax obligations in one lump sum, were made two to five months after the relevant tax period.

The Defendant has not offered any evidence rebutting the Trustee's assertion that late tax payments made under threat of a Business Closure Order are not ordinary in the Debtor's industry, *i.e.*, are not made according to objectively ordinary business terms.  Therefore, the Court finds that § 547(c)(2) does not shield the Transfers from avoidance.

**B.     The $243,328 Soft Drink Tax is avoidable as a preference.**

Although not delineated in § 547 as a separate element of a preference claim, the introductory language in § 547(b) limits application of the statute to transfers of "an interest of the Debtor in property" (which in most cases simply means "the debtor's property").  The Defendant

---

[11] *Id*. at 497-98 (citing *In Re Magic Circle Energy Corp.*, 64 B.R. 269, 272 (Bankr. W.D. Okla.1986)).

[12] The Defendant maintains that it did not serve the Business Closure Order on the Debtor until December 27, 2005, which would have been after the Debtor paid the Defendant $243,328 on December 23, 2005.  However, the Defendant also states that the Debtor "timely complied" with the order, indicating that the Debtor had notice of the Business Closure Order before the Debtor made the December 23 payment.

argues that the Transfers cannot be avoided as preferences under § 547(b) because they weren't transfers of the debtor's property – rather, they were transfers of the Defendant's property that the Debtor held in trust for the Defendant's benefit. While this theory (discussed in greater detail below) might have some validity with regard to Compensating Use Taxes which are collected by a distributor from the *purchasers* of its goods, the Soft Drink Tax is levied directly on the distributor based on the volume of soft drink syrup or bottled drinks it sells.[13] The Soft Drink Tax is levied under Ark. Code Ann. § 26-57-904, which provides in pertinent part:

> (a) There is hereby levied and there shall be collected a tax upon every distributor, manufacturer, or wholesale dealer, to be calculated as follows:
> (1) Two dollars ($2.00) per gallon for each gallon of soft drink syrup or simple syrup sold or offered for sale in the State of Arkansas;
> (2) Twenty-one cents (21¢) per gallon for each gallon of bottled soft drinks sold or offered for sale in the State of Arkansas;
> (3) Where a package or container of powder or other base product, other than a syrup or simple syrup, is sold or offered for sale in Arkansas, and the powder is for the purpose of producing a liquid soft drink, then the tax on the sale of each package or container shall be equal to twenty-one cents (21¢) for each gallon of soft drink which may be produced from each package or container by following the manufacturer's directions. This tax applies when the sale of the powder or other base is sold to a retailer for sale to the ultimate consumer after the liquid soft drink is produced by the retailer.

Quite simply, there is nothing in this provision or in the structure of the transaction giving rise to the tax that provides any basis for the recognition of an express trust or the imposition of a constructive trust on the funds the Debtor used to make the $243,328 Soft Drink Tax payment. Therefore, the Court finds that the $243,328 Soft Drink Tax payment was, indeed, a transfer of an interest in property of the Debtor. Since the Defendant has conceded that all the other elements of § 547(b) have been met, and the Court has determined that § 547(c)(1) and (2) do not except the Transfers from avoidance, the Court concludes that, as a matter of law, the $243,328 Soft Drink Tax payment is avoidable under 11 U.S.C. § 547(b) and is recoverable from the Defendant under § 550.

**C.    There is a material issue of fact as to whether the $35,000 Compensating Use Tax payment was a transfer of an interest in property of the Debtor.**

---

[13] Ark. Code Ann. § 26-57-904.

The parties devoted a great deal of ink to debating the precedent established by the Supreme Court in *Begier v. Internal Revenue Service*.[14] The Trustee argues that *Begier* stands for the proposition that a payment made by a debtor on an antecedent tax debt will constitute a transfer of the debtor's property unless the applicable tax provision specifically states that the debtor holds the taxes in trust for the benefit of the taxing authority. In this case, the statute imposing the Compensating Use Tax – § 26-53-123 – does not contain such language so, the Trustee contends, the $35,000 Compensating Use Tax payment was a transfer of the Debtor's property. The Defendant, on the other hand, argues that *Begier* is factually distinguishable and does not preclude the imposition of an implied trust under state law. A careful study of *Begier*, however, reveals that neither party has honed in on the true import of *Begier* on this case.

In *Begier*, the trustee sought to avoid several transfers the debtor had made from its general account to the I.R.S. within the 90-day preference period. The transfers were made to pay outstanding federal income and FICA taxes that the debtor had withheld from its employees and to pay certain excise taxes the debtor had collected from its customers. The primary tax provision at issue in *Begier,* 26 U.S.C. § 7501, provides: "Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States." The defendant in *Begier* (the I.R.S.), like the Defendant here, argued that the payments it received from the debtor during the preference period weren't preferences because the debtor made those payments with funds it was holding in trust for the I.R.S. Unlike the Trustee here, however, the trustee in *Begier* did not argue that the statute did not create a trust, but rather that a trust doesn't arise until a debtor segregates or pays the withheld taxes to the I.R.S.; therefore, the trustee argued, the payments to the I.R.S. made from the debtor's general account were not trust funds.[15] Thus, the two questions facing the Supreme Court were: 1) *when* does a trust arise on withholding taxes, and 2) are funds taken from a debtor's general account and used to pay those taxes subject to the trust?

Answering these questions, the Supreme Court first held that a trust arises under § 7501

---

[14] 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990).

[15] *Id.* at 62-63.

8

when the taxes are collected or withheld so the debtor's subsequent failure to segregate the taxes did not defeat the existence of a trust.[16] Notably, the Court based its decision on the meaning and operation of the words "collected" and "withheld," rather than the presence (or absence) of explicit trust language. Then, the Supreme Court held that the statute's imposition of a trust on the abstract "amount" of taxes withheld, versus a trust on a specific asset or account, meant that it wasn't necessary for there to be a "nexus" between the taxes collected or withheld and the funds used to remit the taxes to the I.R.S.[17] The notable aspect of this second holding is the Supreme Court's contradistinction of § 7501 with the common-law trust paradigm:

> Unlike a common-law trust, in which the settlor sets aside particular *property* as the trust res, § 7501 creates a trust in an abstract "amount"– a dollar *figure* not tied to any particular assets – rather than in the actual dollars withheld. Common-law tracing rules, designed for a system in which particular property is identified as the trust res, are thus unhelpful in this special context. (emphasis in original)

*Begier* has two implications for this case. First, the Court finds that *Begier* does not stand for the proposition that specific trust language is necessary to create a trust to insulate a transfer from avoidance under § 547(b). The taxing statute as issue in *Begier* had such language, but there is nothing in *Begier*'s holding which indicates the absence of such language is fatal to the imposition of a trust under state law. Consequently, the Trustee is not entitled to summary judgment on the basis that the Arkansas law imposing the Compensating Use Tax (§ 26-53-123) does not contain specific trust language. While the Court is skeptical, the Defendant should be given the opportunity to establish that the statute and the circumstances surrounding the $35,000 Compensating Use Tax payment give rise to a constructive trust in favor of the Defendant under state law.

The second implication of *Begier*, though, highlights a significant hurdle the Defendant faces going forward. In *Begier*, the specific language in § 7501 imposing a trust on the "amount" of taxes collected or withheld by the debtor relieved the trustee of the need to trace the funds transferred to the actual taxes collected or withheld by the debtor. Section 26-53-123 (and the related statutes) has no such language, and, consistent with the common-law constructive paradigm discussed in *Begier*, Arkansas law requires a party seeking the imposition of a constructive trust to trace, or "identify,"

---

[16] *Id*.

[17] *Id*. at 63-67.

the trust res.[18] Therefore, in accordance with Arkansas law, the Defendant will need to trace, by clear and convincing evidence,[19] the $35,000 Compensating Use Tax payment to the taxes collected by the Debtor pursuant to § 26-53-123.

## CONCLUSION

For the reasons stated herein, the Court will grant in part and deny in part the Trustee's motion for summary judgment. The motion is granted with regard to the $243,328 the Debtor transferred to the Defendant on December 23, 2005. The Trustee has established all of the elements required under 11 U.S.C. § 547(b) to avoid this transfer, none of the defenses contained in § 547(c) applies to this transfer, and the Trustee may recover it from the Defendant pursuant to 11 U.S.C. § 550. Summary judgment will be denied, however, with regard to the $35,000 the Debtor transferred to the Defendant on January 3, 2006. Although the Trustee has established all of the enumerated elements required for avoidance under § 547(b)(1)-(5) and established that none of the § 547(c) defenses applies, there remains a material issue of fact precluding summary judgment as to whether the $ 35,000 was a transfer of an interest of the debtor in property or a transfer of trust property held by the Debtor for the benefit of the Defendant.

A separate order consistent with this Memorandum Opinion will be entered pursuant to Fed. R. Bankr. P. 9021.

**ENTERED** this 12th day of May 2008.

                                                               /s/  Jerry W. Venters
                                                              United States Bankruptcy Judge

A copy of the foregoing mailed electronically or
conventionally to:
David B. Kaufman
Amy E. Hatch

---

[18] *See Malone v. Hines*, 822 S.W.2d 394, 397 (Ark. Ct. App. 1992) ("[A] constructive trust will follow property through all changes in its state or form, *so long as such property, its product, or its proceeds are capable of identification*.") (emphasis added).

[19] *See Waterall v. Waterall*, 155 S.W.3d 30, 33 (Ark. 2004) ("To impose a constructive trust, there must be full, clear, and convincing evidence leaving no doubt with respect to the necessary facts.") (citing *Tripp v. C.L. Miller*, 105 S.W.3d 804 (2003)).